UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HSBC Bank USA, N.A., as Trustee for Fremont Home Loan Trust 2005-A, Mortgage-backed Certificates, Series 2005-A, <br><br>  Plaintiff, <br><br>  v. <br><br> Damian J. Hardman; HSBC Finance Corporation, Successor in Interest to Household Bank F.S.B., a Federal Savings Bank; JPMorgan Chase Bank, N.A., Successor in Interest to First Deposit Bank, <br><br>  Defendants. | No. 12 C 00481 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiff HSBC Bank USA, as Trustee for Fremont Home Loan Trust 2005-A (HSBC), brought this mortgage foreclosure action against Defendant Damian J. Hardman, the mortgagor of certain residential real property. Hardman now moves to dismiss HSBC's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 16, 23. For the reasons stated below, Hardman's motion is denied.

**I.**

On November 16, 2004, Fremont Investment and Loan (Fremont) lent Damian J. Hardman $120,000 subject to a Note executed in favor of Fremont. R. 1, Compl. ¶ 10. On the same day, Fremont executed a Mortgage to secure the Note on Hardman's

home, located at 17821 Country Club Drive, Country Club Hills, IL 60478. *Id.* Fremont secured its interest in the Note by recording the Mortgage with the Cook County Recorder's Office on December 8, 2004. *Id.* ¶ 10(e). The mortgagee of the Mortgage was the Mortgage Electronic Registration Systems, Inc. (MERS), which acted as a nominee for the lender, Fremont. R. 1-3, Mortgage at 1. Under the terms of the Note, Hardman agreed to pay 7.7 percent in interest at a yearly rate, and to make monthly payments on the first day of every month in the amount of $855.56. R. 1-4, Note at 1.

On February 1, 2005, Fremont executed a Pooling and Service Agreement (PSA), in which it transferred the Mortgage to Fremont Home Loan Trust 2005-A. R. 28, PSA. On December 14, 2011, MERS, as Fremont's nominee, assigned the rights associated with the Mortgage and the Note to HSBC, as Trustee for Fremont Home Loan Trust 2005-A. R. 1-5, Assignment. The Assignment of Mortgage was signed by Noemi Morales, acting as "Assistant Secretary" of MERS. *Id.* According to the terms of the Assignment , HSBC acquired all of MERS's interests in Hardman's property pursuant to the Mortgage. *Id.*

In July 2011, Hardman defaulted on his monthly obligations to pay principal, interest, and taxes, and has not made a payment since that time. Compl. ¶ 10(j). There remains a principal balance of $113,028.11 with interest accruing on the unpaid principal balance at $23.99 per day plus attorneys' fees, foreclosure costs, late charges, advances, and expenses. *Id.* After Hardman defaulted, HSBC filed a complaint to

foreclose the mortgage against Hardman in January 2012. Hardman now moves to dismiss HSBC's complaint under Rule 12(b)(1) for lack of standing.[1]

## II.

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim where there is a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion under 12(b)(1) can also seek to dismiss a claim for lack of standing. *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). In ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint, drawing reasonable inferences in the plaintiff's favor. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (internal citations omitted). The plaintiff bears the burden of establishing the required elements of standing. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The question of standing is jurisdictional in nature, and addresses "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation mark omitted)). There are both constitutional and prudential limitations on the jurisdiction of federal courts. *Warth*, 422 U.S. at 498. Under Article III of the Constitution, federal-court jurisdiction is limited to claims presenting a case or controversy between the plaintiff

---

[1] Hardman raises an alternate theory of dismissal under Rule 12(b)(6) in its reply brief, but because the standing issue is dispositive, and arguments raised for the first time in reply are waived, *Citizens Against Ruining the Env't v. E.P.A.*, 535 F.3d 670, 675-76 (7th Cir. 2008), the Court need not address the 12(b)(6) issue here.

3

and the defendant. *Id*. In order to establish constitutional standing, the party invoking federal jurisdiction must demonstrate "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Even if constitutional standing is established, however, there are also prudential limitations to a federal court's exercise of jurisdiction. *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). Prudential standing requires plaintiffs to assert their own legal rights and interests, and not rest their claims on the legal rights or interests of third parties. *Warth*, 422 U.S. at 499. The latter requirement is similar to the requirement of Federal Rule of Civil Procedure 17 that every action must be prosecuted in the name of the real party in interest. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008).

### III.

Hardman challenges HSBC's standing to bring the present foreclosure action on two primary grounds: First, Hardman asserts that MERS had no power to assign the mortgage to HSBC in the first place, and thus HSBC cannot enforce the Note. Second, Hardman contends that even if MERS had the power to assign the mortgage, the assignment was invalid under the terms of the Pooling and Service Agreement (PSA). The Court will address each of these theories in turn.

### A.

Citing to no legal authority, Hardman asserts that HSBC has no standing to bring this foreclosure action because the assignment from MERS suffers from several allegedly fatal defects. Specifically, Hardman argues that (1) the purported Assignment

4

was not from MERS at all because it was executed by Noemi Morales, an employee of Ocwen, R. 16, Def.'s Mot. to Dismiss ¶ 4; (2) MERS "had no interest in the note or the mortgage to assign," *id.* ¶ 5; (3) even if MERS had an assignable interest, it could not assign the mortgage or note as Fremont's nominee, *id.* ¶ 6; and (4) the assignment was defective because a note can only be conveyed by means of an endorsement on the Note itself. *Id.* ¶ 7.

As discussed above, a plaintiff must establish that both the constitutional and prudential requirements for standing have been satisfied. As part of Article III's case-or-controversy requirement, a plaintiff must demonstrate constitutional standing by establishing (1) an injury in fact; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). There is no question that HSBC satisfies the minimum requirements of constitutional standing here. The complaint alleges the Mortgage is in default; that Hardman's failure to make monthly payments caused the default; and that a judgment of foreclosure would redress the default.

As noted above, however, a complaint may meet the standards of constitutional standing, yet fail to overcome the prudential standing hurdles. *FMC Corp.*, 852 F.2d at 988. In such a case, dismissal under Rule 12(b)(1) would still be warranted. *Mann v. Calumet City, Ill.*, 2009 WL 395465, at *17 (N.D. Ill. Feb. 17, 2009). Here, although Hardman does not label it as such, Hardman is challenging, as a factual matter,

5

HSBC's status as the real party in interest to bring this foreclosure action.[2] In other words, Hardman is arguing that because the Assignment of Mortgage from MERS to HSBC was invalid, HSBC does not have prudential standing to sue. Thus, the question of whether HSBC has prudential standing turns on whether the Assignment is valid.

Hardman first asserts that the Assignment is defective because it was not executed by MERS at all, but rather by Neomi Morales, an employee of Ocwen. Hardman claims that Ms. Morales pretended to sign for MERS without any evidence she has authority to do so. Aside from his bald allegation of forgery, Hardman offers no evidence that Ms. Morales was not who she claimed to be. Because the Court must accept as true all material allegations of the complaint and draw reasonable inferences in HSBC's favor when ruling on a motion to dismiss for want of standing, *Lee*, 330 F.3d at 468 (internal citations omitted), the Court rejects Hardman's claim that the Assignment was forged.

Next, Hardman argues that HSBC lacks standing because MERS had no interest in the Note or Mortgage to assign. The Mortgage and Note attached to the complaint prescribe how payments are to be made, the rights and obligations of the respective parties under each of the instruments, and the manner of foreclosure in the event of default. Specifically, the Mortgage states in bold type-face that "MERS is the mortgagee under this Security Instrument." Mortgage at 1. The Mortgage provides:

---

[2]Although matters of prudential standing are waived if not preserved (unlike constitutional standing, which is not subject to waiver), *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (internal citations omitted), there is no waiver problem here.

> This Security Instrument secures to Lender: (i) repayment of the Loan, and all renewals, extensions and modifications of the note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property [described as the Hardman property].

*Id.* at 3. The Mortgage further provides that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise *any or all of those interests, including, but not limited to, the right to foreclose and sell the Property*; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* (emphasis added). This clear language gives MERS, as mortgagee, an assignable interest in the mortgage. That the mortgage was transferred to HSBC via the PSA does not change this fact. Indeed, Hardman cites no support in fact or law to indicate that MERS, as mortgagee, lost its interest in the mortgage when the mortgage was transferred via the PSA. As the Illinois Appellate Court has recognized in *Mortgage Electronic Registration Systems, Inc. v. Barnes*, the language of the mortgage confers the right to foreclose upon MERS, even if the mortgage or the note were beneficially owned by another entity. 940 N.E.2d 118, 124 (Ill. App. Ct. 2010).[3] Accordingly, MERS had an assignable interest in the mortgage.

---

[3]The parties assume that Illinois law applies, and in this case where diversity jurisdiction is invoked, the Court will join in that assumption. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993).

Hardman contends that even if MERS had an assignable interest, it did not have the power to assign the mortgage as Fremont's nominee. Again, the language from the Mortgage is instructive. The Mortgage unambiguously states that MERS possesses, and may assign, the right to foreclose on the mortgaged property. Mortgage at 3. This Court has interpreted this language to unambiguously grant MERS the power to assign the Mortgage and the Note. *See Ocwen Loan Servicing LLC v. Kroening*, 2011 WL 5130357, at *4 (N.D. Ill. Oct. 28, 2011) (interpreting the same language). Under Illinois law, a mortgagee may generally assign its rights in a mortgage, and the assignee then steps into the shoes of the assignor with respect to the rights and duties of the assignor. *See Poindexter v. Nat'l Mortg. Co.*, 1995 WL 242287, at *4 (N.D. Ill. Apr. 24, 1995) (internal citations omitted). Illinois defines "mortgagee" more broadly than just the holder of a note of indebtedness, and includes "any person designated or authorized to act on behalf of such holder." 735 ILCS 5/15-1208; *accord Barnes*, 940 N.E.2d at 124 (holding that MERS could foreclose on a mortgage, even if it was not the beneficial interest holder of the debt, in part because of the broad statutory definition of "mortgagee" under Illinois law). MERS clearly fits the description of mortgagee, particularly since the Mortgage not only names MERS as the mortgagee but also grants it authority to act on behalf of the holder of the Note. Accordingly, MERS, as Fremont's nominee, had authority to assign the right to foreclose to HSBC.

Finally, Hardman contends that the assignment was defective because a note can only be conveyed by a means of endorsement on the note itself. This is incorrect. A note is a negotiable instrument, and when endorsed in blank, it is subject to

8

assignment by transfer and possession. *Kroening*, 2011 WL 5130357, at *4 (internal citations omitted). Under Illinois law, "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving the delivery the right to enforce the instrument." 810 ILCS 5/3-203(a). A "non-holder in possession of the instrument who has the rights of a holder" is entitled to enforce the instrument. 810 ILCS 5/3-301. Where a plaintiff bringing a foreclosure action attaches a copy of both the mortgage and note as exhibits to the complaint in accordance with 735 ILCS 5/15-1504, that is sufficient to establish possession. Here, HSBC has attached a copy of the Note to its complaint, and thus is deemed to be in possession of the Note notwithstanding the lack of endorsement. Accordingly, under Illinois law, HSBC has the right to enforce the Note.

Because MERS's Assignment of Mortgage to HSBC is valid, HSBC is properly asserting its own legal rights and interests in the Mortgage, and thus HSBC has prudential standing to bring this foreclosure action.

**B.**

Hardman also attacks HSBC's standing to bring suit by arguing that the Assignment of Mortgage is invalid under the PSA. As a threshold matter, Hardman contends that the Court may not consider the PSA because HSBC failed to attach it to the complaint, and only introduced the PSA for the first time in its response brief. Even if the PSA were fair game, Hardman contends, MERS failed to comply with the terms of the PSA in assigning the Mortgage. Moreover, Hardman argues that HSBC's omission of the Mortgage Loan Schedule, which lists all of the mortgages transferred

9

to the Trust under the PSA, gives rise to the inference that Hardman's mortgage was not actually transferred to the Trust. R. 23, Def.'s Resp. Br. ¶ 13.

In determining whether we may consider the PSA for purposes of a motion to dismiss, the Court must first determine whether Hardman is challenging our jurisdiction as a facial or factual matter. Subject matter jurisdiction can be challenged either as a facial or factual matter. *See Apex Digital*, 572 F.3d at 443. Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction. *Id.* (emphasis in original) (internal citations omitted). Factual challenges, on the other hand, apply where "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (internal quotations omitted). When considering a motion to dismiss that launches a factual attack against jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (internal quotations omitted).

Here, HSBC's complaint sufficiently alleges a basis for subject matter jurisdiction (namely, that there is proper diversity jurisdiction and that HSBC is the legal holder of the Note), but Hardman argues that the Court *in fact* has no subject matter jurisdiction because the Assignment is invalid. Because Hardman is mounting a factual challenge to subject matter jurisdiction, the Court may properly view any

additional evidence that has been submitted on the issue—including the PSA—even if it was not originally attached to the complaint.

The PSA was executed between Fremont and HSBC on February 1, 2005, and provides for the transfer of notes and mortgages from Fremont to the Trust. Specifically, Section 2.01 requires the original note to bear evidence of a complete chain of assignment from MERS to the last endorsee. PSA § 2.01(a)(vi). Hardman claims that MERS failed to comply with the PSA's transfer requirements, and thus the Mortgage was never properly transferred to HSBC. Def.'s Repl. Br. ¶ 16.

There might very well be defects in the way the note and mortgage were transferred under the PSA, but the Court need not address them for purposes of this motion to dismiss. This is because Hardman, as the borrower, is not a party to the PSA, and courts have generally held that third parties do not have standing to enforce the terms of a PSA. *See, e.g.*, *In re Correia*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011); *In re Walker*, 466 B.R. 271, 282 (Bankr. E.D. Pa. 2012); *In re Washington*, 468 B.R. 846, 852 (Bankr. W.D. Mo. 2011); *In re Smoak*, 461 B.R. 510, 519 (Bankr. S.D. Ohio 2011); *In re Edwards*, 2011 WL 6754073, at *4 (Bankr. E.D. Wis. Dec. 23, 2011); *In re Almeida*, 417 B.R. 140, 149 (Bankr. D. Mass. 2009). Accordingly, Hardman has no standing ("standing" in the third-party beneficiary sense) to challenge whether the parties have complied with the terms of the PSA, or to challenge whether his mortgage was included in the PSA's Mortgage Loan Schedule. Thus, the question of who properly holds the note and mortgage must be evaluated without regard to the PSA for purposes of this motion to dismiss. And, as discussed above, MERS's assignment of mortgage to

HSBC is valid under Illinois law. Accordingly, HSBC is the proper holder of the Mortgage and Note, and has prudential standing to bring this foreclosure action against Hardman.

## IV.

For the reasons stated above, Hardman's motion to dismiss for lack of standing [R. 16] is denied.

> ENTERED:
>
> *Edmond E. Chang*
> Honorable Edmond E. Chang
> United States District Judge

DATE: January 29, 2013