IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HSBC BANK USA, N.A., AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-A, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-A; <br><br> Plaintiff, <br><br> v. <br><br> DAMIAN J. HARDMAN; HSBC FINANCE CORPORATION, SUCCESSOR IN INTEREST TO HOUSEHOLD BANK F.S.B., A FEDERAL SAVINGS BANK; JPMORGAN CHASE BANK, N.A, SUCCESSOR IN INTEREST TO FIRST DEPOSIT NATIONAL BANK; <br><br> Defendants. | No. 12-CV-481 <br><br><br><br><br> Hon. Edmond E. Chang |
| DAMIAN J. HARDMAN, <br><br> Counter-Plaintiff, <br><br> v. <br><br> HSBC BANK USA, N.A., AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-A, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-A; <br> Counter-Defendant. | |

## ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES Defendant Damian J. Hardman ("Mr. Hardman"), by his

attorneys, Property Rights Law Group, P.C., and hereby submits his Answer and

Affirmative Defenses to Plaintiff's "Complaint to Foreclose Mortgage" ("Complaint")

and states as follows:

1.     Allegation:   *Plaintiff files this Complaint to Foreclose the Mortgage, hereinafter described.*

        Answer:     Mr. Hardman admits that the Plaintiff files this Complaint. But Plaintiff is not the servicer of Fremont Home Loan Trust 2005-A and therefore lacks authority to foreclose mortgages owned by that Trust, and there is no evidence that that Trust owns Mr. Hardman's mortgage.

2.     Allegation:   *Jurisdiction of this Court is based on diversity of citizenship, 28 U.S.C. 1332. There is complete diversity and the matters in controversy, exclusive of interest and costs, exceed the sum of $75,000.*

        Answer:     Mr. Hardman states that Paragraph 2 is a statement of law, not of fact, and as such does not require an answer.

3.     Allegation:   *Plaintiff is a national association chartered under the laws of Virginia, and having its principal place of business and headquarters in the State of Virginia.*

        Answer:     Mr. Hardman admits the allegations of Paragraph 3.

4.     Allegation:   *Defendant(s) is/are citizen(s) of the following State(s): Damian J. Hardman the State of IL*

        Answer:     Mr. Hardman admits the allegations of Paragraph 4.

5.     Allegation:   *The citizenship of other persons or entities joined as defendants is as follows: JPMORGAN CHASE BANK, NA, SUCCESSOR IN INTEREST TO FIRST DEPOSIT NATIONAL BANK - is a national association chartered in Ohio and having its principal place of business and headquarters in Ohio. HSBC FINANCE CORPORATION, SUCCESSOR IN INTEREST TO HOUSEHOLD BANK F.S.B., A FEDERAL*

*SAVINGS BANK - is a corporation incorporated in Delaware and having its principal place of business in Illinois.*

Answer: Mr. Hardman states that he lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 5, and therefore neither admits nor denies them, but rather demands strict proof thereof.

6. Allegation: *Venue is proper in this District because the Mortgage at issue is secured by property located in this District and because a substantial part of the events or omissions giving rise to the claim occurred here. 18 U.S.C. § 1391.*

Answer: Mr. Hardman admits the Mortgage at issue is secured by property located in this District and a substantial part of the events or omissions giving rise to the claim occurred in this district.

7. Allegation: *Plaintiff elected to accelerate the principal balance due, together with accrued interest, fees and costs, and confirms that election by the filing of this complaint.*

Answer: Mr. Hardman denies that Plaintiff has the authority to accelerate his mortgage payments.

8. Allegation: *Any pre-suit notice requirements have been met, and any and all grace periods have expired or have been waived.*

Answer: Mr. Hardman denies the allegations of Paragraph 8.

9. Allegation: *Attached as Exhibit "A" is a copy of the Mortgage. Attached as Exhibit "B" is a true copy of the Adjustable rate note ("Note") secured thereby. Attached as Exhibit "C" is a copy of the Assignment of Mortgage.*

Answer: Mr. Hardman admits the allegations of Paragraph 9, except that he denies that the document shown in Exhibit "C" assigns his mortgage.

10.      Allegation:      *Information concerning mortgage:*
10(a).                        *Nature of instrument:  mortgage*

          Answer:          Mr. Hardman admits the allegations of Paragraph 10(a).


10(b).  Allegation:  *Date of mortgage:  11/16/2004.*

Answer:                  Mr. Hardman admits the allegations of Paragraph 10(b).


10(c).  Allegation:  *Name of mortgagor:  Damian J. Hardman*

Answer:                  Mr. Hardman admit the allegations of Paragraph 10(c).


10(d).  Allegation:  *Mortgage Information:*
10(d)(i)                *Name of Original Mortgagee: Fremont Investment & Loan*

          Answer:          Mr. Hardman admits the allegations of Paragraph
                                10(d)(i).

10(d)(ii).  Allegation:  *Name of Current Mortgagee:  HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-A, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-A*

          Answer:          Mr. Hardman denies the allegations of Paragraph
                                10(d)(ii).


10(d)(iii).  Allegation:  *Name of Current Loan Servicer:  Ocwen Loan Servicing, LLC.*

          Answer:          Mr. Hardman denies the allegations of Paragraph
                                10(d)(iii).

10(e).  Allegation:  *Date and Place of Recording: 12/08/2004, in the Office of the Cook County Recorder's Office*

          Answer:          Mr. Hardman admits the allegations of Paragraph 10(e).


10(f).  Allegation:  *Identification    of    Recording:    Document/Instrument    No. 0434320104*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(f).

10(g). Allegation:    *Interest subject to the mortgage: Fee Simple.*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(g).

10(h). Allegation:    *Amount of Original Indebtedness: including subsequent advances made under the mortgage: $120,000.00*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(h).

10(i). Allegation:    *Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:*

*LOT 495 in Block 24 in Winston Park Unit Five, being a subdivision of part of the Northwest Quarter and also the West Half of the Southwest Quarter of the Northeast Quarter of section 35, Township 36 North, Range 13, East of the Third Principal Meridian, according to the plat thereof recorded in the Cook County Recorder's Office as document 21810812 on February 17, 1972 and filed with the Registrar of Titles of Cook County, Illinois on January 26, 1972 as document number LR2604946 and certificate of correction registered on September 6, 1972 as document LR2646492, in Cook County, Illinois.*

*More Commonly Known As:*      *17821 Country Club Dr.*
                               *Country Club Hills, IL 60478*

*Permanent Index No.*          *28-35-117-013*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(i).

10(j). Allegation:    *Statement as to defaults: The Mortgage is in default due to the failure of the mortgagor(s) to pay the monthly installments of principal, interest, and taxes from 07/01/2011 through the present. There remains an outstanding principal balance of $113,028.11 with interest accruing on the unpaid principal balance at $23.99 per day, plus attorneys fees, foreclosure costs, late charges, advances, and expenses incurred by the Plaintiff as a result of the default.*

Answer:     Mr. Hardman denies the allegations of Paragraph 10(j).

10(k). Allegation: *Name of present owner of the real estate:*
*Damian J. Hardman*

          Answer:     Mr. Hardman admits the allegations of Paragraph 10(k).

10(l). Allegation: *Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:*

*That HSBC Finance Corporation, successor in interest to Household Bank F.S.B., a Federal Savings Bank is a party to this action by virtue of a Junior Mortgage between Raymond Armand and Antoinette B. Armand, Mortgagor(s), and HSBC Finance Corporation, successor in interest to Household Bank F.S.B., a Federal Savings Bank, Mortgagee, dated February 23, 1978 and recorded March 7, 19789 as document number 3003058 in the amount of $31,800.00.*

*That JPMorgan Chase Bank, NA, successor in interest to First Deposit National Bank is a party to this action by virtue of a judgment entered against Judy W. Hardman in case number 96 MI 167 87 recorded March 5, 1997 as Instrument 97149445 in the amount of $5,683.35*

          Answer:     Mr. Hardman admits the allegations of Paragraph 10(l).

10(m). Allegation: *Names of defendant claimed to be personally liable for deficiency, if any: Damian J. Hardman*

          Answer:     Mr. Hardman admits the allegations of Paragraph 10(m).

10(n). Allegation: *Capacity in which Plaintiff brings this foreclosure: Plaintiff is the legal holder of the indebtedness and the owner of the mortgage given as security given as security therefore.*

          Answer:     Mr. Hardman denies the allegations of Paragraph 10(n).

10(o). Allegation: *The redemption period terminates on one of the following dates, whichever is later:*
*If the Property is Residential Real Estate:*

> *(i)  7 months from the date the mortgagor [or, if more than one, all the mortgagors]*
>> *(I) have been served with summons or by publication or*
>> *(II)  have otherwise submitted to the jurisdiction of the court; or*
>
> *(ii) 3 months from the entry of the judgment of foreclosure.*
>
> *If the Property is Non-Residential Real Estate:*
> *(i)  6 months from the date the mortgagor [or, if more than one, all the mortgagors]*
>> *(I) have been served with summons or by publication, or*
>> *(II)  have otherwise submitted to the jurisdiction of the Court; if commercial real estate; or*
>
> *(ii) 3 months from the entry of the judgment of foreclosure.*
>
> *Pursuant to the terms of the 735 ILCS 5/15-1603, the Court will determine the length of the redemption period upon making a finding, based on the facts and circumstances available to the Court at the time of judgment, that the property is either residential, non-residential, abandoned, or real estate of value less than 90 percent of amount owed.*

Answer:    Mr. Hardman states that Paragraph 10(o) is a statement of law, not of fact, and as does not require an answer.

10(p). Allegation:    *Facts in support of request for attorneys' fees and of costs and expenses, if applicable:  Pursuant to the terms of the Note and Mortgage, the mortgagee is entitled to recover attorneys' fees, court costs, title costs, and other expenses, which plaintiff has been and will be required to expend in the prosecution of this foreclosure.*

Answer:    Mr. Hardman admits the allegations of Paragraph 10(p).

10(q).Allegation:    *Facts in support of a request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver if sought:  Plaintiff reserves the right to file a separate Petition for Appointment of Mortgagee in Possession or Receiver, if applicable.*

Answer:    Mr. Hardman admits the allegations of Paragraph 10(q).

10(r).  Allegation:    *Plaintiff reserves the right to offer, in accordance with Section 15-1402 [735 ILCS 5/15-1402] to accept title to the real estate in*

*satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(r).

10(s). Allegation:     *Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof:*

*Damian J. Hardman by virtue of being the Mortgagor(s) and/or Owners of record*

Answer:     Mr. Hardman admits the allegations of Paragraph 10(s).

## AFFIRMATIVE DEFENSES

1.    Damian J. Hardman ("Mr. Hardman") has not completed his investigation into the facts of this case, has not completed discovery in this matter, and has not completed preparation for trial. The affirmative defenses asserted herein are based on Mr. Hardman's knowledge, information, and belief at the time this Answer and Affirmative Defenses was filed, and Mr. Hardman specifically reserves the right to modify, amend, or supplement any affirmative defenses contained herein at any time. Mr. Hardman reserves the right to assert additional defenses as information is gathered through discovery and investigation.

2.    Subject to the preceding qualifications, Mr. Hardman alleges the following separate affirmative defenses to Plaintiff's "Complaint to Foreclose Mortgage" ("the Complaint").

## List of Exhibits

Exhibit "A," is a copy of the Note, which was attached to the Complaint;

Exhibit "B," is a copy of the Mortgage, which was attached to the Complaint;

Exhibit "C," is a public record from the SEC's website of all filings made by
Trust 2005-A, showing when Trust 2005-A was closed to further ac-
quisitions;

Exhibit "D," is Trust 2005-A's Form 15-15D, "Certification and Notice of Ter-
mination of Registration;"

Exhibit "E," is the Office of Inspector General of the FDIC Report No. 04-034,
"Proceeds from Terminated Securitizations" from September 13, 2004,
explaining that a Form 15-15D often means that the trust that filed it
is terminated, not merely that its registration is terminated;

Exhibit "F," is the purported "Assignment of Mortgage" signed in the name of
Noemi Morales and recorded on December 29, 2011;

Exhibit "G," is a publication of the Southern Essex County Massachusetts
Recorder of Deeds, a government agency, which names Noemi Morales
as having forged and falsified documents recorded in that office;

Exhibit "H," is a Notice of Violation, showing that Noemi Morales is an em-
ployee of Ocwen Loan Servicing LLC ("Ocwen");

Exhibit "I," is an assignment of mortgage executed by "Noemi Morales" on
behalf of Ocwen;

Exhibit "J," is a transcript of the hearing in *Everbank v. Gordon,* Circuit
Court of the 6th Judicial Circuit for Pinellas County, Florida, Civil
Division (Case Number: 11-008264-CI-11), showing the practice in the

mortgage industry: if the true mortgagee is not a party to the

foreclosure, the true mortgagee is not bound by the terms of the

foreclosure, and the mortgagor pays twice; and

Exhibit "K," is an Affidavit of Damien J. Hardman, testifying that he never

received a Notice of Default (Letter of Acceleration) as required by the

Mortgage.

<u>First Affirmative Defense: Lack of Standing</u>

3.      Plaintiff in Paragraph 10(n) of its "Complaint to Foreclose Mortgage"
states that "Plaintiff is the legal holder of the indebtedness and the owner of the
mortgage given as security given [sic] as security therefore." This is simply not
true. Plaintiff has presented no evidence in the pleadings that it is the legal holder
of the indebtedness and owner of the mortgage.

4.      Standing requires that the party prosecuting the action have a suf-
ficient stake in the outcome and that the party bringing the claim be recognized in
the law as being the real party in interest. This requirement ensures that "issues
are presented to a court only by parties who have a sufficient stake in the outcome
of the controversy," *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill.2d 473,
482, 607 N.E.2d 165, 180 Ill.Dec. 271 (1992). Any party lacking such interest has no
standing to sue. *Hartigan,* 153 Ill.2d. at 482.

5.      Plaintiff, "HSBC Bank USA, N.A., as Trustee for Fremont Home Loan
Trust 2005-A, Mortgage-backed Certificates, Series 2005-A," makes three claims, all

of which are necessary for its claim of ownership of the Note and Mortgage, and thus standing:

    a.    that the Note and the Mortgage were sold to "Fremont Home Loan Trust 2005-A, Mortgage-backed Certificates, Series 2005-A" ("Trust 2005-A"), a mortgage-backed securities trust, registered with the SEC;

    b.    that HSBC Bank is the trustee of Trust 2005-A; and

    c.    that the trustee of Trust 2005-A has authority under that trust to foreclose.

6.    However, there is no evidence that any one of Plaintiff's three necessary claims is true, and there is strong *prima facie* evidence that at least one of them is false. Thus, for the following five reasons Plaintiff is not a real party in interest, has failed to join an indispensable party, and lacks standing to bring this action.

### *I. The Note was not negotiated to Trust 2005-A.*

7.    On November 16, 2004, Mr. Hardman signed an "Adjustable Rate Note" ("the Note") in favor of Fremont Investment & Loan ("Fremont"). (A purported copy of the unendorsed Note, as it appeared attached to Plaintiff's Complaint, is attached hereto as Exhibit "A.")

8.    The Note was secured by a Mortgage, which was publicly recorded. In the Mortgage, under Paragraph (C), it states:

"MERS" is Mortgage Electronic Registration Systems, Inc.
MERS is a separate corporation that is acting solely as a

nominee for Lender and Lender's successors and assigns.
MERS is the mortgagee under this Security Instrument.

(A complete, true, and correct copy of the Mortgage as it appeared when it was recorded on December 8, 2004, is attached hereto as Exhibit "B.")

9.     The Note, if it is a negotiable instrument, can be enforced by either (1) "the holder of the instrument," or (2) "a non-holder in possession of the instrument, who has the rights of a holder . . . ." *See* 810 ILCS 5/3-301.

10.     To qualify as a "holder," one must receive the note through "Negotiation." *See* 810 ILCS 5/3-301(a). "If an instrument is payable to an identified person [as in the case at bar] negotiation requires transfer of possession of the instrument and its endorsement by the holder." *See* 810 ILCS 5/3-301(b). Since the Note is not endorsed by the "identified person" (that is, Fremont Investment & Loan), Plaintiff cannot be the holder of the instrument.

11.     Thus, in order to enforce the instrument, Plaintiff must be "a non-holder in possession of the instrument who has the rights of a holder." *See* 810 ILCS 5/3-301. Plaintiff must therefore prove that (1) it has possession of the instrument, and (2) it has the rights of the holder.

12.     However, Plaintiff cannot fulfill either element of 810 ILCS 5/3-301. First, upon information and belief, HSBC Bank does not have possession of the actual Note, because Plaintiff has not offered any evidence of physical possession of the Note in its pleadings. As required by Illinois law, "proof of possession is essential for standing to enforce payment on an instrument." *See Locks v. North Towne Nat'l Bank*, 115 Ill.App.3d 729, 731 (Ill.App.Ct. 2d Dist. 1983) (holding a

plaintiff must have possession of the instrument in order to have standing to enforce the instrument).  Indeed, possession is so important that the *Locks* Court noted "[m]oreover, a plaintiff's legal interest to sue upon an instrument must be shown as of <u>commencement</u> of the suit." *Id.* at 733 (emphasis added).

13.    Second, Plaintiff does not have the "rights of the holder."  Plaintiff can qualify as a non-holder in possession, only if "under applicable law [it] is a successor to the holder or otherwise [acquired] the holder's rights." *See* 810 ILCS 5/3-301 Official Comment.  However, Plaintiff has failed to show how, under applicable law, it is either the successor to Freemont or otherwise acquired Fremont's interest in the Note.  There is no explanation, no receipt, no record of purchase, and no bill of sale to evidence such a large transfer of property.

14.    It is Plaintiff's burden to prove that it is entitled to enforce the instrument.  In its pleadings, Plaintiff has failed to do so.  *See* 810 ILCS 5/3-308(b) (providing the elements of a plaintiff's *prima facie* case: the plaintiff must be entitled to enforce the instrument and prove all signatures are authentic and authorized).  Mr. Hardman specifically denies that Plaintiff has met its burden of fulfilling the elements of a *prima facie* case, and thus has no standing to enforce the Note.

### II. Alternatively, the Note is not a negotiable instrument. As such, the Note must be transferred by the common law of contracts.

15.  In the alternative, the Note is not a negotiable instrument *per se,* while it is a promise to pay money, it is merely a contractual obligation.

16.     Even if Plaintiff were to meet its burden and prove that it is a "non-holder in possession of the instrument who has the rights of a holder" under 810 ILCS 5/3-301(ii), it would be meaningless, because Article 3 of the Uniform Commercial Code would not apply.

17.     Only "negotiable instruments" as defined by Article 3 of the UCC can be transferred by negotiation.  Thus, the threshold question must be, "is the Note a negotiable instrument?"  It is not.  Under 810 ILCS 5/3-104, a negotiable instrument is defined as:

> . . . an <u>unconditional</u> promise or order to pay a <u>fixed amount of money</u> . . .  [which] <u>does not state any other undertaking or instruction</u> by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain: (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of any obligor.  [emphasis added]
>
> [Furthermore, under 810 ILCS 5/3-106] a promise or order is unconditional unless it states . . . that the promise or order is <u>subject to or governed by another writing</u>.  [emphasis added]

A promissory note that meets this strict definition is "negotiable" under Article 3 of the U.C.C.  A promissory note that does not meet this strict definition is not negotiable under Article 3.  By its own terms, the Note does not meet this strict definition. As such, it is not negotiable, and Plaintiff cannot claim possession of the Note even if it were to have physical control of the Note and the rights of the holder.

18.    First, the Note contains several costs and expenses, which are not for a "fixed amount of money."

a.    Paragraph 7(E), "Payment of Note Holder's Costs and Expenses" states:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  <u>Those expenses include, for example, reasonable attorneys' fees</u>.  [emphasis added]

The Note Holder is thus entitled to an uncertain amount of money. Reasonable attorney's fees are uncertain sums to be paid.  Plus, the clause "for example" suggests there are other costs and expenses not even listed.  These uncertain amounts could add up to more than the principal itself.  (See Exhibit "A," the Note.)

b.    Paragraph 6, "Loan Charges," contains a usury-savings clause.  This clause attempts to negate interest payable that may otherwise result in more than the law permits.  It states:

> If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted

> limits will be refunded to me. The Note
> Holder may choose to make this refund by
> reducing the Principal I owe under this Note
> or by making a direct payment to me. If a
> refund reduces Principal, the reduction will
> be treated as a partial Prepayment.

This usury-savings clause destroys negotiability because it makes the

Note for an uncertain amount of money. (See Exhibit "A," the Note.)

19. Second, the Note as it is drafted does not meet the test that it must

"not state any other undertaking or instruction." Paragraph 8 includes other

undertakings in addition to the payment of money, which are not permitted by the

U.C.C. Paragraph 8, "Giving of Notices," mandates any notice from the Borrower be

delivered in writing:

> Any notice that must be given to the Note Holder under
> this Note will be given by delivering it or by mailing it by
> first class mail to the Note Holder at the address stated in
> Section 3(A) above or at a different address if I am given a
> notice of that different address.

This clause falls outside the U.C.C.'s strict definition of negotiable. (See Exhibit "A,"

the Note.)

20. Finally, the Note is non-negotiable because it "is subject to or governed

by another writing." Paragraph 11 of the Note states:

> In addition to the protections given to the Note Holder
> under this Note, a Mortgage, Deed of Trust, or Security
> Deed (the "Security Instrument"), dated the same date as
> this Note, protects the Note Holder from possible losses
> which might result if I do not keep the promises which I
> make in this Note. <u>That Security Instrument describes
> how and under what conditions</u> I may be required to
> make immediate payment in full of all amounts I owe

- 16 -

under this Note. <u>Some</u> of those conditions are described as follows: . . . <u>Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.</u> [Emphasis added.]

In other words, the "how and under what conditions" of the Note cannot be understood without the explicit incorporation of an external document and therefore is "subject to or governed by another writing." (See Exhibit "A," the Note.)

      a.    Explicitly incorporating the "Security Instrument"--an external document--on two separate occasions destroys negotiability. Since "Lender may invoke any remedies permitted by this Security Instrument" the Note cannot be read without the Security Instrument, and thus is "subject to or governed by another writing." (See Exhibit "A," the Note.)

      b.    By including the word "Some" in the Note, the Lender also reserves other unlisted conditions, and thus the Note is "subject to or governed by another writing"-- a writing that may not have even existed at the time the Note was executed. (See Exhibit "A," the Note.)

21. In sum, the presence of any one of the above provisions found in the Note--the additional costs and expenses "not for a fixed amount of money," the additional "undertaking or instruction . . . in addition to the payment of money," or the fact that the Note is "subject to or governed by another writing"--means the

Note does not meet the strict definition of "negotiable," is not governed by Article 3 of the U.C.C., and thus cannot be transferred by negotiation.

22.     The Note is, in fact, unendorsed, which is evidence that the parties recognize the Note is non-negotiable and have not attempted to negotiate it.   (See Exhibit "A," the Note, page 3, where any endorsement would be.)

23.     Rather, the Note is only transferable under the common law of contracts, which requires a complete of chain of title and independent consideration, neither of which is present.

24.     Since HSBC Bank cannot be a "non-holder in possession" of the Note, it is attempting to enforce the terms of the Note and Mortgage under a theory of contract.   In a breach of contract action in Illinois, "a plaintiff must allege the essential elements which are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Gallagher Corp. v. Russ*, 309 Ill.App.3d 192, 199 (Ill.App.Ct. 1999) (holding a dismissal of a breach of contract claim was proper because plaintiff was insufficiently plead it was a party to the contract).

25.     In the case at bar, the burden is on Plaintiff to state a cause of action. However, Plaintiff's own Complaint alleges that Fremont entered into the contract with Mr. Hardman.   Nowhere in the Complaint does Plaintiff allege facts that would support the existence of a valid and enforceable contract between itself and Mr. Hardman.

26.     Second, nowhere in the Complaint does Plaintiff allege that it has performed any of the duties of the "mortgagee." Plaintiff has not alleged that it has sent mortgage statements, credited an account, provided the borrower with requisite notice requirements, or lent any money to Mr. Hardman.

27.     Third, nowhere in the Complaint has Plaintiff stated how it has been injured over an alleged breach of contract between Mr. Hardman and Fremont.

28.     There is absolutely no evidence---no assignment, no allonge, no receipt, no statement of consideration paid, no letter to Mr. Hardman, not even a certificate of lost Note---to suggest that the transfer of ownership of a Note worth over one hundred thousand dollars occurred at all.

29.     Moreover, in its own records, Trust 2005-A itself makes no mention of Mr. Hardman's Note and Mortgage. The Note and Mortgage are not listed as an asset in any of the mandatory U.S. Securities and Exchange Commission ("SEC") filings, nor is it listed in Trust 2005-A's Pooling and Servicing Agreement. A list of all filings made by Trust 2005-A is published at http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001319314&owner=include&count=40. The Court may take judicial notice of information found on this government-sponsored website. (A complete, true, and correct copy of a list of all filings is attached hereto as Exhibit "C.")

30.     Trust 2005-A has not published any information regarding ownership of Mr. Hardman's loan--either in a Free Writing Prospectus, or in a Registration

Prospectus, or in a Pooling and Servicing Agreement, or in any exhibit therein. (*See* Exhibit "C," the list of SEC filings.)

31.    Therefore, Plaintiff has not properly plead a breach of contract action, and thus has no standing to bring forth the instant suit as Trustee of Trust 2005-A. Plaintiff was not party to Mr. Hardman's Note and Mortgage contracts, nor did HSBC Bank purchase Mr. Hardman's Note and Mortgage.  The Note and Mortgage either remain the property of Fremont or an unknown entity.

32.    Plaintiff was neither a party to, nor a beneficiary of, Mr. Hardman's contract with Fremont.  It is Plaintiff's burden to show and prove a complete chain of ownership and consideration paid, which it has failed to do.

### III. Alternatively, even if Trust 2005-A acquired the Note and the Mortgage, it may have been terminated and dissolved in 2006.

33.    On January 27, 2006, Trust 2005-A filed its Form 15-15D, "Certification and Notice of Termination of Registration," with the SEC.  Trust 2005-A's "Certification and Notice of Termination of Registration" is published by the SEC at http://www.sec.gov/Archives/edgar/data/1319314/000105640406000784/form0500a_ 15-2005.txt.  (A complete, true, and correct copy of the 15-15D filing is attached hereto as Exhibit "D.")

34.    The filing of a Form 15-15D means one of only two things: either (1) the entity was dissolved and terminated, or (2) the entity "went dark," that is, under a suspended duty to publicly report.

35.    Even if Trust 2005-A somehow purchased the Note and Mortgage (without any evidence whatsoever documenting the purchase), upon information

and belief, Trust 2005-A was nonetheless terminated and dissolved in 2006. Pursuant to New York law, the trust's assets were sold to third parties--the actual mortgagees that are not named parties to the Plaintiff's action.

36.     On March 31, 2006, Trust 2005-A filed its final 8-K Annual Report. On or before this date, all of the assets of Trust 2005-A were distributed to the certificateholders of the Trust, and they became the only mortgagees, the only owners and legal holders of the Note and the Mortgage. *See Byers v. Sheets*, 643 F. Supp. 695, 697 (W.D. Mo. 1986).

37.     Furthermore, the Office of Inspector General of the FDIC issued Report No. 04-034, "Proceeds from Terminated Securitizations" (September 13, 2004), which states, concerning private-label trusts that used a Form 15-15D when the trust was terminated:

> When each securitization was terminated, it retained two assets—reserve funds [money from having sold its mortgage] and residual certificates [unsold mortgage] . . . . At termination of each trust, the trustee sold the remaining loans and used the proceeds to pay off the remaining certificate balances . . . . The rules governing the termination of a securitization transaction are contain in the Pooling and Servicing Agreement (PSA) created between the RTC, servicer, and trustee . . . .

*See* "Proceeds from Terminated Securitizations," attached hereto as Exhibit "E, with the relevant passage highlighted in yellow by counsel.

38.     Therefore, if Trust 2005-A was terminated in 2006, Plaintiff as Trustee sold all of Trust 2005-A's assets, including all Notes and Mortgages, to other

entities. If so, then Plaintiff can no longer be the trustee of those Notes and Mortgages.

39. Trust 2005-A has made no public filings with the SEC for the last seven years. (See Exhibit "C," list of filings.) Therefore, upon information and belief, Trust 2005-A was terminated and dissolved years ago. After March 31, 2006, the date of possible termination and dissolution, Plaintiff has had no interest whatsoever in either the Note or the Mortgage. Plaintiff has failed to show that it exists legally and is more than a fictional strawman.

## IV. Alternatively, even if Trust 2005-A merely "went dark," it is legally prohibited from receiving assets.

40. On January 27, 2006, Trust 2005-A, filed its Form 15-15D, with the SEC. The filing of a Form 15-15D means only one of two things: either (1) the entity was dissolved and terminated, or (2) the entity "went dark," that is, under a suspended duty to publicly report.

41. If the trust "went dark," as opposed to dissolution and termination, the result stays the same: Plaintiff can have no interest in the Note and the Mortgage.

42. The filing of a Form 15-15D is for the purpose of "going dark," then it is filed pursuant to Section 12-G of the SEC Act of 1934 ("Termination and Registration of Certificates"), which falls under Section 7 of the Investment Company Act of 1940, which states that after the trust files a 15-15D, the trust cannot "purchase, redeem, retire, or otherwise acquire or attempt to acquire, by use of the mails or any means or instrumentality any security or any interest in a security." *See* 15 USCS § 80a-7.

43.     Therefore, Trust 2006-4 was prohibited by law from acquiring any "security or any interest in a security," which includes a Mortgage or a Note.  If Trust 2005-A did not acquire the Note and the Mortgage before January 27, 2006, (the date of the 15-15D filing) it never acquired the Note and the Mortgage.

44.     However, on December 14, 2011, six years later, MERS (assuming *arguendo* it had an interest in the Mortgage) executed an "Assignment of Mortgage" on the Subject Property.  This purported "Assignment of Mortgage" was recorded on December 29, 2011.  (A complete and correct copy of the purported "Assignment of Mortgage," as it was recorded is attached hereto as Exhibit "F.")

45.     This purported "Assignment of Mortgage" is evidence that Plaintiff as Trustee knew that Trust 2005-A did not have any interest in the Note or the Mortgage.  Otherwise, an Assignment of Mortgage would not be necessary.

46.     However, pursuant to 15 USCS § 80a-7, HSBC Bank as Trustee for Trust 2005-A was prohibited from acquiring or even attempting to acquire the Note and Mortgage.  The Assignment of Mortgage is thus a *per se* violation of Section 7 of the Investment Company Act of 1940.  The purported "Assignment of Mortgage" on October 10, 2008, is therefore void.

47.     Furthermore, by bringing the instant foreclosure action, Trust 2005-A is "attempt[ing] to acquire an interest"--that is, the security interest of the Note.  This attempt is also a violation of 15 USCS § 80a-7.  Any attempt to acquire Mr. Hardman's property must also be void.

48.     Whether Trust 2005-A was terminated and dissolved, or merely "went

dark" is inconsequential. Either outcome yields the same result. Plaintiff as Trustee cannot and does not have an interest in Mr. Hardman's Note and Mortgage. Thus, Plaintiff does not have standing to bring the instant suit.

### V. MERS's purported "Assignment of Mortgage" is invalid.

49. The purported "Assignment of Mortgage" executed on December 14, 2011, is void for three additional reasons.

50. First, it is an "Assignment of Mortgage," not an assignment of a Note. The purported "Assignment of Mortgage" can have no legal effect since it is well-settled law that "the mortgage follows the note" and not vice versa. *See Carpenter v. Longan*, 83 U.S. 271, 272 (U.S. 1873) (holding a note and a mortgage are inseparable).

51. In a valid assignment of mortgage, the promissory note must be transferred with the mortgage. Mortgages cannot under any circumstances be separated from their notes. "Bifurcated Mortgages," as a matter of law, are invalid because it would be absurd for a creditor not to be able to foreclose and for someone else who is owed nothing to be able to foreclose. *Id.* Yet, that is exactly what Plaintiff is attempting.

52. Second, there has been no consideration paid for the purported "Assignment of Mortgage." If this were a proper assignment, there would be evidence showing a chain of title, with Plaintiff signing a receipt and stating the consideration paid. A receipt for a cup of coffee is more complex and telling of a business transaction than this purported "Assignment" attempting to convey a

$120,000 Mortgage. (See Exhibits "A," and "F.")

53. Third, the "Assignment of Mortgage" executed on August 26, 2008, is a forged document created to manufacture standing to foreclose.

54. Noemi Morales executed the purported "Assignment of Mortgage" in West Palm Beach, Florida, purportedly sas an "Assistant Secretary" of MERS. (See Exhibit "F," the Assignment of Mortgage.)

55. However, "Noemi Morales" never worked for MERS. Noemi Morales was not, and never was, an officer of MERS, and MERS has never recorded any power of attorney for Ms. Morales in the Office of the Recorder of Deeds of Cook County. Noemi Morales is actually an employee of Ocwen, and, upon information and belief, she had no authority from MERS to divest MERS of its full interest (if any) in the Note and/or the Mortgage.

56. As evidence of this fact, there is no record of a MERS office in Palm Beach, Florida, where the document was executed and notarized. However, significantly, Ocwen lists its mailing address on the "Assignment of Mortgage" as West Palm Beach, Florida.

57. On June 29, 2011, at the Annual Conference of The International Association of Clerks, Recorders, Election Officials and Treasurers (IACR-EOT), John L. O'Brien, Jr., Register of Deeds of Southern Essex District Registry of Deeds, in Salem, Massachusetts, revealed the results of an independent audit of his registry. The audit, which is released as a legal affidavit, was performed by McDonnell Property Analytics and examined assignments of mortgage recorded in the Essex

Southern District Registry during 2010. In total, 565 assignments by MERS were analyzed, and the results were alarming. McDonnell concluded that only 16% of the assignments were valid, 27% of the assignments were fraudulent, and 35% of the assignments were "robo-signed." After the audit, Register O'Brien concluded, "My registry is a crime scene." In order to combat the rampant fraud, Register O'Brien and Southern Essex District have published their findings on a government-sponsored website, of which, this Court may take judicial notice. The webpage: http://www.salemdeeds.com/robosite/?returnURL=http://www.salemdeeds.com/new website, contains a tool that the public can use to determine if they have been a victim of fraud in this situation. Part of this tool includes a list of known and confirmed "robo-signers," uncovered in the independent Audit. Register O'Brien and Southern Essex District Massachusetts warns the public of Noemi Morales, who was identified as an active "robo-signer." (A complete, true, and correct copy of the "Robo-signers List," updated in June 12, 2012, with Noemi Morales' name highlighted by present counsel, and published by the Southern Essex District Registry of Deeds, is attached hereto as Exhibit "G.")

58. Moreover, in a Notice of Violations of an abandoned bank-owned property issued on December 15, 2010, an employee of the City of Desert Hot Springs, California, served the Notice on the bank that owned the property: Ocwen Loan Servicing, LLC, Attn: Noemi Gonzales-Morales in West Palm Beach, Florida. (A complete, true, and correct copy of the Notice of Violation with a Service List naming Noemi Gonzales as an employee of Ocwen is attached hereto as Ex. "H.")

59.    Further evidence that Noemi Morales actually works for Ocwen appears in another "Assignment of Mortgage," where she signs on behalf of "New Century Mortgage Corporation by its Attorney in Fact Ocwen Loan Servicing, LLC." This "Assignment of Mortgage" was executed just three months after Noemi Morales signed on behalf of MERS in the case at bar. (A complete, true, and correct copy of the "Assignment of Mortgage" recorded in Pottawattamie County, Iowa is attached hereto as Exhibit "I.")

60.    All of this evidence adds up to one thing: Noemi Morales works for Ocwen and not MERS.  Therefore, upon information and belief, Noemi Morales did not have the authority to act on behalf of MERS, even if MERS could assign an interest in the Mortgage.

61.    In sum, Plaintiff cannot own the Note or the Mortgage.  Nor can Plaintiff act on behalf of the owner of the Note and Mortgage.  That separate entity is the real party in interest, and an indispensable party to this case.  As Plaintiff is not the real party in interest in this matter, and the Complaint fails to join the necessary party to this case, this Complaint must be dismissed in its entirety.

62.    Should this Court not dismiss the Complaint, the consequences would be inequitable and disastrous.  Plaintiff is attempting to defraud Mr. Hardman and the actual mortgagees and take the Subject Property through theft by false pretenses--wrongfully foreclosing on a Mortgage it neither owns nor legally holds, without notice to the true mortgagees.

## Second Affirmative Defense:
## Failure To Join An Indispensable Party

63.     For the reasons listed above, Plaintiff is not the current owner of the mortgage-loan, nor has the mortgage-loan been assigned back to Plaintiff. The exhibits clearly indicate that the Note and Mortgage are owned by an entity other than Plaintiff. That separate entity is the real party in interest, and an indispensible party to the case at bar. Thus, the Complaint fails to join a necessary party.

64.     Plaintiff has failed to make the mortgagee a party to the case at bar, and upon information and belief has failed even to notify the mortgagee and creditor of the existence of this case.

65.     If Plaintiff is allowed to proceed with its manufactured foreclosure action, Mr. Hardman will be harmed in three material ways: (1) Plaintiff does not have authority to release the Mortgage when it is paid, (2) Mr. Hardman has no counterpart with whom he can negotiate a modification of the terms of the Note and the Mortgage, and (3) Mr. Hardman will have to pay the amount of the indebtedness twice--once when the collateral is taken by Plaintiff and again when the true mortgagee sues for the full amount of the indebtedness under the Note.

66.     This troubling reality of Mr. Hardman's "double jeopardy" was recently at issue during a hearing in a case in the State of Florida with substantially similar facts to the case at bar. The cross-examination by defendant's counsel of a representative of Everbank, a banking institution in Jacksonville, Florida, is very illustrative of the exact same problem that Mr. Hardman now faces:

| *Question*: | Why would you not return that document [the note]? |
|---|---|
| *Answer*: | That's not customary practice to -- to show that mortgage was done; there's also an outstanding balance that was waived on behalf of the borrower; and Fannie Mae has not waived their rights to seek a deficiency. |

. . .

| Question: | So the true owner of the note, the holder of the note, may come back against Ms. Gordon [defendant]. |
|---|---|
| Answer: | I have no idea what their intentions are. They take possession of the note once the approval has been completed. Whether or not they seek a deficiency or not is up to Fannie Mae as the owner and holder of the note at that point. |

In other words, the holder of the Note need not release the Note even though a banking institution has already foreclosed upon the security interest. The holder of the Note can still sue upon the Note as a personal debt long after the foreclosure. *See* the transcript of the hearing on "Defendant's Motion for Award of Attorney's Fees and Costs before the Honorable Pamela A.M. Campbell," 2 October 2012, in *Everbank v. Gordon.* (A complete, true, and correct copy of which, with emphasis added, is attached hereto as Exhibit "J.")

### Third Affirmative Defense: Failure Of Conditions Precedent

67. Plaintiff failed to provide Mr. Hardman with a Letter of Acceleration or Notice of Default as required by and/or that complies with the terms of the Mortgage as set forth by Paragraph 22, "Acceleration; Remedies." This Notice of Acceleration is to include: (a) notice of the default; (b) the action required to cure the default; and (c) a date, not less than 30 days from the date the notice is given to

Borrower, by which the default must be cured.  The notice must also state that Mr. Hardman has the right to reinstate the loan after acceleration and the right to assert the non-existence of default or any other defense in a court proceeding. (See Exhibit "B," the Mortgage, Paragraph 22.)

68.     The parties have contemplated perfect compliance with all sections of the Mortgage, because Mr. Hardman would still be in "default" under the terms of the Mortgage even if he otherwise "substantially complied" with the Mortgage.  For instance, even if Mr. Hardman honored the terms of the Mortgage for 29 years and 11 months--missing only the last payment--he would still be in default under the Mortgage.  Therefore, even if Plaintiff owned the Note and Mortgage, Plaintiff has failed to comply with the terms of the Mortgage that Plaintiff drafted.

69.     Therefore, Plaintiff failed to provide Mr. Hardman the time prescribed therein to cure the default prior to commencement of any foreclosure action.  As a result, Mr. Hardman was denied a good-faith opportunity, pursuant to the mortgage, to avoid acceleration and this foreclosure.  This amounts to conditions precedent, pursuant to the contract that Plaintiff must perform before it can seek relief.

70.     The Affidavit of Mr. Damian J. Hardman is attached hereto as Exhibit "K."  It states under oath that Mr. Hardman has never received a Notice of Default (Letter of Acceleration) from Plaintiff or the mortgagee.

## Fourth Affirmative Defense:  Lack Of Authority

71.     In the alternative, the case at bar has been filed by another party in the name of Plaintiff without authority from Plaintiff and without authority from the mortgagee(s), the holder(s) of the Note, and the lender/creditor under the Mortgage.

72.     Even if Trust 2005-A owned the Mortgage (and it does not), there is another problem that is fatal to Plaintiff's authority in the case at bar: the Pooling and Servicing Agreement of Trust 2005-A requires that all foreclosure actions involving mortgages owned by Trust 2005-A must be prosecuted by the servicer of Trust 2005-A (Wells Fargo Bank), not by its trustee (HSBC).

## Fifth Affirmative Defense: Unclean Hands

73.     The allegations in Paragraph 10(n) of the Complaint, that Plaintiff is the mortgagee, are false and were not made in good faith.  For reasons stated above, some entity, by and through its counsel, is trying to manufacture standing in a court of law.  They are using Plaintiff as a straw man to deceive this Court as well as Mr. Hardman.  (*See* Exhibit "F.")

74.     Under the Doctrine of Unclean Hand*s*, a party who is asking for a judgment in equity cannot have the help of the court if that party has done anything unethical in relation to the subject of the lawsuit.  In this instance, Plaintiff has asserted falsities regarding its standing, its ownership of the Note and

Mortgage, and its authority to foreclose in courtroom pleadings.  Plaintiff cannot be allowed to proceed under such misrepresentations.


                                                           Respectfully submitted,

                                                       /s/ Robert L. Stone
                                                  Attorney for Defendant
                                                  Damian J. Hardman

Robert L. Stone
PROPERTY RIGHTS LAW GROUP, P.C.
161 North Clark Street
Suite 4700
Chicago, Illinois  60601
telephone: (312) 523-2109
facsimile: (773) 256-1288
Attorney ID #15278

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HSBC BANK USA, N.A., AS )
TRUSTEE FOR FREMONT HOME )
LOAN TRUST 2005-A, MORTGAGE- )
BACKED CERTIFICATES, SERIES )
2005-A; )
     )
        Plaintiff, )
        v. )
     )
DAMIAN J. HARDMAN; HSBC )    No. 12-CV-481
FINANCE CORPORATION, )
SUCCESSOR IN INTEREST TO )
HOUSEHOLD BANK F.S.B., A )
FEDERAL SAVINGS BANK; )
JPMORGAN CHASE BANK, N.A, )
SUCCESSOR IN INTEREST TO )    Hon. Edmond E. Chang
FIRST DEPOSIT NATIONAL BANK; )
     )
        Defendants. )
_____ )
     )
DAMIEN J. HARDMAN, )
     )
        Counter-Plaintiff, )
        v. )
     )
HSBC BANK USA, N.A., AS )
TRUSTEE FOR FREMONT HOME )
LOAN TRUST 2005-A, MORTGAGE- )
BACKED CERTIFICATES, SERIES )
2005-A; )
        Counter-Defendant. )
_____ )

## COUNTERCLAIM

NOW COMES Counter-Plaintiff Damian J. Hardman ("Mr. Hardman"), by

his attorneys, Property Rights Law Group, P.C., and hereby submits his Counter-

claim and alleges thereof as follows:

## VIOLATION OF UNITED STATES
## FAIR DEBT COLLECTION PRACTICES ACT

1.      Mr. Hardman hereby realleges and incorporates the facts as stated in

his accompanying Answer and Affirmative Defenses.

2.      Counter-Defendant HSBC Bank's actions violate (and will continue to

violate) the United States' Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et*

*seq.*, which provides in relevant part:

> §807. A debt collector may not use any false, deceptive, or
> misleading representation or means in connection with
> the collection of any debt . . . . [T]he following conduct is a
> violation of this section: . . .
>
> (2) The false representation of –
>        (A) the character, amount, or legal status of any
>        debt; or . . .
>
> (4) The representation or implication that nonpayment of
> any debt will result in the . . . sale of any property . . .
> unless such action is lawful . . . ,
>
> (5) The threat to take any action that cannot legally be
> taken . . . .
>
> (8) Communicating or threatening to communicate to any
> person credit information which is known or which should
> be known to be false . . . .
>
> (10) The use of any false representation or deceptive
> means to collect or attempt to collect any debt . . . .
>
> §808. A debt collector may not use unfair or uncon-
> scionable means to collect or attempt to collect any debt . .
> . . [T]he following conduct is a violation of this section:
>
> (1) The collection of any amount . . . unless such amount

is expressly authorized by the agreement creating the debt . . . .

3.     Within the last year, Counter-Defendant HSBC Bank through its attorneys acted as a debt collector, under the FDCPA because it used instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts owed to another.

4.     Counter-Defendant HSBC Bank is not the holder of Mr. Hardman's Note or Mortgage, nor is Counter-Defendant the mortgagee.

5.     Counter-Defendant HSBC Bank did not loan any money to Mr. Hardman with respect to the mortgage.

6.     However, Counter-Defendant HSBC Bank sought payments, which were actually "owed . . . to another."

7.     Through its agent--Burke Costanza & Carberry LLP, a law firm— Counter-Defendant announced in its Complaint to Foreclose, that "This is an attempt to collect a debt . . . ." (*See* Complaint.)

8.     Within the last year, Counter-Defendant HSBC Bank knowingly and intentionally communicated, and continues to communicate, deceptive, false, fraudulent, and misleading statements to Mr. Hardman representing or implying that Counter-Defendant is the holder of the Note and the Mortgage. (*See* Exhibit "F.")

9.     Counter-Defendant HSBC Bank sent communications to Mr. Hardman falsely representing that Counter-Defendant had standing and authority to foreclose the Mortgage.

- 35 -

10.     Counter-Defendant HSBC Bank has used false, deceptive, and misleading representations to Mr. Hardman in connection with the collection of an alleged debt.

11.     Counter-Defendant HSBC Bank falsely represented to Mr. Hardman the character, amount, and legal status of the alleged debt.

12.     Counter-Defendant has falsely represented to Mr. Hardman that nonpayment of the alleged debt will result in a sale of the Subject Property.

13.     Counter-Defendant HSBC Bank has communicated with third parties information about Mr. Hardman' credit, which information is known, or which should be known by Counter-Defendant, to be false: that Counter-Defendant is the mortgagee.

14.     Counter-Defendant HSBC Bank has used false representations, deception, and unconscionable means to collect or attempt to collect the allege debt from Mr. Hardman.

15.     Counter-Defendant has attempted to collect the alleged debt from Mr. Hardman in an amount not expressly authorized by the agreement creating the debt and not permitted by law.

16.     The actions of Counter-Defendant HSBC Bank against Mr. Hardman have caused both general and special actual damages to Mr. Hardman, including but not limited to the following:

a.      reduction in property value from $115,000 to zero.

b.      paying out of pocket for uninsured damages,

     c.      loss of reputation,

     d.      increased cost of borrowing money,

     e.      emotional harm, and

     f.      other general and special actual damages.

TOTAL: $215,000.00

WHEREFORE, Counter-Plaintiff, Mr. Hardman, respectfully requests that this Court enter an order:

     a.      Awarding Counter-Plaintiff statutory damages in the amount of $1,000 plus general and special actual damages in the amount of $215,000, plus punitive damages;

     b.      Awarding Counter-Plaintiff reasonable attorneys' fees and costs;

     c.      Under 28 U.S.C § 2201, Counter-Plaintiff seeks a judgment by this Court declaring the rights (if any) of Counter-Defendant HSBC Bank; and

     d.      Granting any such other and further relief as it deems just and proper.

Respectfully Submitted,

    /s/ Robert L. Stone

Attorney for Counter-Plaintiff
Damian J. Hardman

Robert L. Stone
Property Rights Law Group, P.C.
161 North Clark Street
Suite 4700
Chicago, Illinois 60601
Telephone: (312) 523-2109
Facsimile: (773) 256-1288
ARDC # 6183568